No. 14-1156

_____

In the

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

_____

Edwina Rogers,

Plaintiff – Appellant

v.

Jon Deane, CPA, Gaffey Deane Talley, PLC,

Defendants – Appellees

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
_____

BRIEF OF APPELLEES

Dennis J. Quinn
Kristine M. Ellison
Carr Maloney PC
2000 L St. NW
Suite 450
Washington, DC 20036
202-310-5500
*Counsel for Appellees*

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES............................................................. v

Preliminary Statement............................................................... 1

Statement of the Issues.............................................................. 2

      1.  Breach of Contract/Accounting Malpractice: Causation.................. 2

      2.  Breach of Contract/Accounting Malpractice: Damages................... 2

      3.  Statutory Business Conspiracy........................................................ 2

      4.  Rule 56(d) Request for Discovery................................................... 3

Statement of the Case................................................................. 4

Factual Background..................................................................... 7

      *The Rogers Separate*................................................................. 8

      *The Divorce Proceedings*.......................................................... 9

      *The First Lawsuit against Jon Deane*...................................... 10

Statement of Standard of Review............................................... 11

SUMMARY OF ARGUMENT..................................................... 13

ARGUMENT................................................................................ 14

I.  THE DISTRICT COURT CORRECTLY APPLIED VIRGINIA
    LAW TO FIND THAT ROGERS COULD NOT RECOVER
    THE DAMAGES SHE SOUGHT AS A MATTER OF LAW..............16

    A. The Proximate Cause of Rogers' Damages was her Failure to
       pay her Income Taxes when they were due..................................... 16

      1.  Regardless of whether her taxes were due on April 15,

2010 or October 15, 2010, Rogers did not pay them on either date.............................................................. 17

    2.  Deane told Rogers she owed income taxes in two separate emails six months prior to the October 15, 2010 deadline................................................................18

    3.  Rogers' actions after failing to pay her taxes on October 15, 2010 caused her to incur additional damages................................................................ 19

    4.  Rogers' arguments about the joint extension request do not prove that Deane proximately caused her damages.......... 20

B. In the Alternative, Rogers' Claimed Damages are Consequential, not Direct, and she Failed to Produce Evidence that Deane Agreed to be Liable for Them.......................................... 22

    1.  Rogers' claimed damages are consequential because they did not naturally or ordinarily arise from a breach of an agreement to prepare a tax return................................... 23

    2.  Rogers failed to present evidence that Deane agreed to be liable for her consequential damages................................24

    3.  Rogers' counsel's concession that her damages are consequential and her failure to argue they were direct preclude her from raising this issue on appeal....................... 26

II.  THE DISTRICT COURT DID NOT ERR IN DISMISSING ROGERS' BUSINESS CONSPIRACY CLAIM....................................28

A. Jon Deane was Acting as Ed Rogers' Agent and Could not Conspire with him Because an Agent and Principal are one Entity under the Intra-corporate Immunity Doctrine........................29

    1.  Deane proved that he was Rogers' agent under Virginia law's two-part test for an agency relationship.........................30

    2.  Rogers' construction of the test for agency is not

supported by Virginia law....................................................... 32

      *a. An agent's authority to alter the legal relations between a principal and a third party is not the "hallmark" of an agency relationship under Virginia law*...................................................32

      *b. The D.C. Circuit's decision in Loving v. IRS is neither binding nor persuasive on this issue*................33

B. In the Alternative, Rogers Failed to Produce Evidence that Deane's Actions Proximately Caused the Alleged Damage to her Business or that he acted with Legal Malice Toward her Business................................................................................... 35

    1. Rogers' theory of causation required too many logical leaps cause reasonable minds to differ on its applicability................................................................... 35

    2. The only evidence of legal malice that Rogers supplied related to her divorce and custody battles, not her business.......................................................................37

III. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION WHEN GRANTING SUMMARY JUDGMENT WITHOUT ALLOWING THE ADDITIONAL DISCOVERY ROGERS REQUESTED.....................................................................39

A. Rogers' First Three Requested Discovery Topics Would not have Created a Disputed Issue of Material Fact in Support of her Breach of Contract Claim............................................. 40

B. Rogers' Fourth and Fifth Proposed Discovery Topics Would not have Created Issues of Material Fact in Support of her Claim for Statutory Business Conspiracy.......................... 41

CONCLUSION................................................................................. 43

STATEMENT REGARDING ORAL ARGUMENT....................................... 46

iv

# TABLE OF AUTHORITIES

## CASES

*Agra, Gill & Duffus, Inc. v. Benson*,
  920 F.2d 1173 (4th Cir. 1990) ..................................................... 21, 27

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)..................................................................... 12, 15

*Anita's New Mexico Style Mexican Food, Inc. v. Anita's Mexican Foods Corp.*,
  201 F.3d 314 (4th Cir. 2000) ....................................................... 32, 33

*Boone v. C. Arthur Weaver Co.*,
  235 Va. 157 (1988) ..............................................................................24

*Bouchat v. Baltimore Ravens Football Club, Inc.*,
  346 F.3d 514 (4th Cir. 2003) ....................................................... 12, 15

*Buschi v. Kirven*,
  775 F.2d 1240 (4th Cir. 1985) ............................................................37

*Celotex Corporation v. Caltrett*,
  477 U.S. 317 (1986).................................................................... 11, 12

*Charles E. Brauer Co. v. Nationsbank*,
  466 S.E.2d 382 (Va. 1996) .................................................................29

*Clay v. La Porta*,
  815 F. Supp. 911 (E.D. Va. 1993) ......................................................12

*Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc.*,
  33 F.3d 390 (4th Cir. 1994) ...............................................................12

*First Am. Title Ins. Co. v.  First Alliance Title, Inc.*,
  718 F. Supp. 2d 669 (E.D. Va. 2010) .................................................29

*First Nat'l Bank of Arizona v. Cities Service Co.*,
  391 U.S. 253 (1968)..................................................................... 15, 43

*Francis v. Allstate Ins. Co.*,
  709 F.3d 362 (4th Cir. 2013) ..............................................................32

*Gov't Emps. Ins. Co. v. Google, Inc.*,
  330 F. Supp. 2d 700 (E.D. Va. 2004) .................................................28

*Hazel & Thomas v. Yavari*,
  251 Va. 162 (1996) ..............................................................................20

*In re Under Seal*,
    749 F.3d 276 (4th Cir. 2014) ................................................................ 16

*Ingle v. Yelton*,
    439 F.3d 191 (4th Cir. 2006) .......................................................... 11, 39

*Isaiah v. WMHS Braddock Hosp. Corp.*,
    343 F. App'x 931 (4th Cir. 2009) .......................................................... 5

*Long v. Abbruzzetti*,
    254 Va. 122 (1997) .............................................................................. 24

*Loving v. IRS*,
    742 F.3d 1013 (D.C. Cir. 2014) ...................................................... 33, 34

*McLean Contr. Co. v. Waterman S.S. Corp.*,
    277 F.3d 477 (4th Cir. 2002) .............................................................. 29

*Meyer v. Berkshire Life Ins. Co.*,
    372 F.3d 261 (4th Cir. 2004) .............................................................. 27

*Nat'l Wildlife Fed'n v. Hanson*,
    859 F.2d 313 (4th Cir. 1988) .......................................................... 21, 27

*Nguyen v. CNA Corp.*,
    44 F.3d 234 (4th Cir. 1995) ................................................................ 11

*Pelphrey v. United States*,
    674 F.2d 243 (4th Cir. 1982) .............................................................. 15

*Potain Tower Cranes, Inc. v. Capitol Tower Cranes, Inc.*,
    892 F.2d 74 (4th Cir. 1989) ................................................................ 27

*R.K. Chevrolet, Inc. v. Hayden*,
    253 Va. 50 (1997) ................................................................................ 22

*Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*,
    673 F.3d 294 (4th Cir. 2012) .............................................................. 11

*Roanoke Hosp. Ass'n v. Doyle & Russell, Inc.*,
    215 Va. 796 (1975) .............................................................................. 22

*Sapuppo v. Allstate Floridian Ins. Co.*,
    739 F.3d 678 (11th Cir. 2014) ............................................................ 16

*Schlegel v. Bank of Am., N.A.*,
    505 F. Supp. 2d 321 (W.D. Va. 2007) ................................................ 38

*Strag v. Bd. of Trustees*,
    55 F.3d 943 (4th Cir. 1995) ................................................................ 11

*Texas Co. v. Zeigler*,
   177 Va. 557 (Va. 1941) ..................................................................33

*Turner v. United States*,
   736 F.3d 274 (4th Cir. 2013) ........................................................11

*Va. Polytechnic Inst. & State Univ. v. Interactive Return Serv.*,
   267 Va. 642 (2004) .......................................................................25

*Wells v. Whitaker*,
   207 Va. 616 (1966) .......................................................................30

*Williams v. Joynes*,
   278 Va. 57 (2009) .................................................................. 17, 20

*Works v. Colvin*,
   519 F. App'x 176 (4th Cir. 2013)............................................. 11, 39

*Wuchenich v. Shenandoah Mem'l Hosp.*,
   215 F.3d 1324 (4th Cir. 2000) ......................................................29

## STATUTES AND REGULATIONS

Fed. R. Civ. P. 56(c)....................................................................11

Va. Code § 18.2-499 ................................................. 28, 29, 37, 39

Va. Code § 18.2-500 .......................................................... 28, 29

Va. Code § 54.1-4413.3 ................................................................5

## OTHER AUTHORITIES

Fed. R. Civ. P. § 2720 (2d ed. Supp. 1994) ...............................12

Restatement (2d) of Agency § 12 ................................................32

## Preliminary Statement

Edwina Rogers incurred penalties, interest and a garnishment from the IRS because she did not pay her taxes when they were due. She does not dispute that she knew when the taxes were due and exactly how much she had to pay. Her former accountant, Jon Deane, sent her two emails telling her that a balance was due to the IRS with her taxes and urging her to file and pay them as soon as possible. She fired Deane three months before the taxes were due and hired a new accountant who prepared a tax return showing she owed taxes. She filed that return but did not pay the taxes she knew she owed. Approximately six months later, Rogers contacted the IRS to request abatement of interest and penalties and acknowledged that she still had not paid her tax liability. Instead of paying the taxes, she sued the accountant based on a grandiose conspiracy theory that her then-husband and the accountant agreed, for some unknown reason, to make her pay more in taxes. Yet Rogers has no evidence to support this conspiracy theory and no evidence that her former accountant did anything that caused her to incur IRS interest and penalties. The district court correctly granted the accountant's motion for summary judgment, and that judgment should be affirmed.

## Statement of the Issues

1. **Breach of Contract/Accounting Malpractice: Causation.** Under Virginia law, a plaintiff pursuing a professional malpractice claim must prove that the professional's negligence was the proximate cause of her claimed damages. Where Rogers knowingly failed to pay her income taxes on time and was charged penalties and interest by the IRS, did she offer sufficient evidence to prove that her accountant's alleged negligence was the proximate cause of her damages?

2. **Breach of Contract/Accounting Malpractice: Damages.** Under Virginia law a plaintiff in a breach of contract action can recover consequential damages only when she can demonstrate that the damages were a foreseeable consequence of the defendant's breach. Rogers fired Deane before her taxes were due and before any damages were incurred; hired another accountant who prepared her tax return; filed that return but did not pay her taxes, and incurred penalties, interest and other damages from the IRS, including a tax lien and garnishment. Were these consequential damages foreseeable to Deane when he agreed to prepare Rogers' tax return?

3. **Statutory Business Conspiracy.** Under Virginia law, a plaintiff suing for statutory business conspiracy must establish that two or more persons

2

conspired to willfully and maliciously injure her business with resulting damage to the business. Rogers alleged that Deane conspired with her then-husband to financially cripple her so she could not challenge him for custody of the children. Did the district court properly grant summary judgment when:

    a.    Deane and Rogers' husband were in a principal-agent relationship?

    b.    Rogers failed to produce evidence that Deane intended to injure her business?

    c.    Rogers had no evidence that Deane proximately caused damage to her business?

4. **Rule 56(d) Request for Discovery.** Requests under Rule 56(d) should be denied when they would not by themselves create disputed issues of material fact. Rogers requested the opportunity to depose Deane and her ex-husband, but she previously deposed both of them in connection with her divorce case. She also exchanged interrogatories, document requests and requests for admissions with Deane in the state court action. Did the district court abuse its discretion in granting summary judgment when she requested this additional discovery?

3

## Statement of the Case

This appeal arises from Appellant Edwina Rogers' unwillingness to accept that she has no legally viable claims against Appellees Jon Deane and Gaffey Deane Talley, PLC (collectively "Deane"). Rogers initially filed an action against Deane, her ex-husband, Edward Rogers, and several others in the Circuit Court for Fairfax County, Virginia, alleging claims for common law conspiracy and intentional infliction of emotional distress against Deane. JA 145-183. She later amended that complaint on two separate occasions, adding claims for professional negligence and breach of contract. JA 580-591. After extensive discovery, including Deane's production of approximately 370 pages of documents to Rogers, she voluntarily dismissed the claims against him under Virginia's nonsuit statute. *Id.*

She later filed an action in the United States District Court for the Eastern District of Virginia against Deane, including claims for professional negligence, breach of contract, intentional infliction of emotional distress and recoupment. JA 10-29. Prior to any filings by Deane, Rogers amended that complaint to include a claim for statutory business conspiracy. JA 30-51. Deane moved to dismiss or for summary judgment on several grounds. JA 52-78. Rogers opposed that motion, and the district court held a hearing.

4

The district court dismissed the amended complaint based on the following determinations: 1) Virginia law does not recognize a separate tort claim for accounting malpractice;[1] 2) Rogers failed to adequately plead the proximate cause and actual damages elements of her breach of contract claim; 3) Rogers failed to adequately plead that her consequential damages were within the parties' contemplation at the time of contracting; 4) Virginia law does not allow recovery for mental anguish in connection with a professional negligence claim; 5) the allegations were not outrageous as a matter of law for Rogers' intentional infliction of emotional distress claim; and 6) the principal/agent relationship between Deane and Rogers' ex-husband precluded them from legally conspiring with one another to injure Rogers' business. JA 655-656.

Following this ruling, the district court allowed Rogers leave to amend her complaint. JA 325. Rogers amended her complaint a second time and included claims for breach of contract, breach of the covenant of good faith and fair dealing, and a nearly identical claim for statutory business conspiracy. JA 326-348. Deane moved for summary judgment on several grounds and supported his motion with

---

[1] As part of this determination, the district court rejected Rogers' reliance on a negligence *per se* theory based on Deane's alleged violations of his statutory and ethical obligations under Va. Code § 54.1-4413.3. JA 315-16. The district court also held that these sources could provide only evidence of the standard of care, not a private right of action. JA 286-87. She repeatedly argues on brief that these alleged violations somehow form part of her claims or demonstrate error on the district court's part. *See, e.g.*, App. Br. at 17, 21 n. 7, 46. Because she did not assign error to the district court's rejection of this theory, she has waived her right to rely on these arguments on appeal. *See Isaiah v. WMHS Braddock Hosp. Corp.*, 343 F. App'x 931, 933 (4th Cir. 2009) (holding failure to identify an argument in the statement of issues and clearly argue that an error occurred constitutes abandonment of the argument.)

5

extensive documentary evidence (produced during discovery in the state court action) demonstrating that no genuine issue of material fact existed with regards to any of Rogers' claims. JA 349-509. Rogers opposed, relying on her own affidavit and a few emails, many of which Deane had included as exhibits to his motion. JA 510-563. Deane replied, and the district court held a hearing. JA 564-647.

Following oral argument, the district court took the matter under advisement and ultimately granted the motion for summary judgment for several reasons. JA 646, 648. Rogers' claimed damages were consequential, and she had not provided evidence that Deane agreed to be liable for these damages. The district court also found that Rogers had not submitted evidence to establish a genuine issue of material fact regarding the proximate cause element of her breach of contract claim. Regarding her claim for breach of the covenant of good faith and fair dealing, the district court held that it was not an independent cause of action and dismissed it as duplicative of the breach of contract claim.[2] The district court granted summary judgment on Rogers' statutory business claim for three distinct reasons: 1) Deane and Mr. Rogers were in a principal agent relationship and therefore could not legally conspire to damage Rogers' business; 2) Rogers failed

---

[2] Although she did not appeal this issue, Rogers asserts that the district court dismissed this claim based on its proximate cause analysis. App. Br. 24, n. 9. This is inaccurate. *See* JA 651 ("The Court grants Defendants' Motion for Summary Judgment on Count II of the Complaint because Plaintiff's claim for breach of covenant of good faith and fair dealing is not an independent cause of action. The Court dismisses [it] . . . as duplicative of the breach of contract claim"). Rogers' counsel also affirmatively abandoned the claim during oral argument on the motion for summary judgment. JA 633.

6

to provide evidence that Deane acted with legal malice toward her business; and 3) Rogers had not produced evidence that Deane's alleged conspiratorial acts caused the claimed damage to her business. JA 650-673. This appeal followed. JA 674.

### Factual Background

Edwina and Edward Rogers were married in 1989 in Washington, D.C. JA 328 ¶ 11. Beginning in 1999, the Rogers employed various child care providers for their children, and were required to pay FICA and other federal employment taxes on their behalf. JA 330 ¶ 34. For ten years the Rogers identified Edwina[3] as the legal employer of the household help and used her social security and employer identification numbers with the payroll company. *Id.* at ¶¶ 34-35. Even though Edwina was listed as the employer, Ed Rogers personally paid the salaries and all related expenses for the family's household employees, including the employment taxes. *Id*. at ¶ 37.

Beginning in the mid-1990s the couple used Deane as their accountant. JA 328 ¶ 17. Deane prepared their annual tax returns using the "married filing jointly" status. JA 334 ¶ 54. The employment taxes for the household help were identified on the joint returns as a joint obligation. *See, e.g.*, JA 376-379. For ten years Deane filed a Schedule H with the couple's joint return identifying Mrs. Rogers as the

---

[3] Edwina Clifton is Rogers' maiden name.

7

statutory employer for purposes of the employment taxes, even though Mr. Rogers actually paid those taxes. *See* JA 331 ¶ 37.

*The Rogers Separate*

The Rogers separated in September 2009 but continued to live in the same residence. JA 328 ¶ 12. In April 2010, Deane requested an automatic six-month extension of time for both Rogers to file their tax return. JA 331-332 ¶ 43; JA 392. The extension request included both spouses' names and social security numbers. JA 392. When Deane filed the request, he believed he would be preparing a joint return for the Rogers. JA 382-385. In May 2010, Ed Rogers directed Deane to prepare an individual tax return for him. JA 386-388. At the time, Deane believed that both Rogers had agreed to file separate returns. JA 382-385. In dealing with the employment taxes, Deane told Ed that because Edwina was listed as the employer, he had to file the Schedule H with her tax return instead of Ed's return. JA 399-400. Ed told Deane that he wanted to make sure the taxes were paid regardless of whose return they were on and inquired as to different options for paying the taxes himself. *Id.*

Edwina Rogers earned over $90,000 in taxable income from her business in tax year 2009 but did not pay any estimated taxes or have any taxes withheld from that income during 2009. JA 389-391. In May and June 2010 Deane sent Rogers emails telling her there was a balance due on her taxes and that she should get her

returns filed with a payment as soon as possible. JA 401-402. He also requested that she call him to discuss. JA 402. When Deane sent these emails he thought she knew he was preparing separate returns for her. JA 382-385. Deane needed additional information from Rogers to complete her returns, and despite his requests, did not receive that information until June 2010. JA 382-385. On July 6, 2010 Rogers called Deane to discuss her return. Deane explained how he did not account for the payment of the employment taxes on Mr. Rogers' return in May, and that they would have to do so on her return.  JA 334 ¶ 54; JA 449-450. He also explained how they dealt with the various deductions and credits for that tax year. JA 382-385. Deane sent her a draft tax return that included the liability for the household employee taxes. *Id.*; *see also* JA 389-391. Rogers fired Deane that same day.[4] JA 382-385. She then retained a new accountant who prepared a 2009 married filing separately return for her. JA 344 ¶ 104. She filed that return on or before October 15, 2010. JA 333 ¶ 47. That return showed that she owed the IRS $56,257. JA 390. Rogers did not pay these taxes when she filed her return. JA 562 ¶ 35.

*The Divorce Proceedings*

Rogers' ex-husband filed for divorce in the Fairfax County Circuit Court in late 2011. Leaving aside the bitter disputes over the custody of their children, the

---

[4] According to Rogers, she did not know that her then-husband had already filed separately until this phone call with Deane. JA 546 ¶ 19.

Rogers were able to resolve the division of their marital property in July 2012. The Marital Settlement Agreement included a provision for Mr. Rogers to pay $1.26 million to Mrs. Rogers in exchange for her releasing him from any claims for "[t]he income-tax refunds payable in connection with the parties' joint 2008 federal and state income tax returns; and payroll and other taxes, interest and penalties for 2009 payable in connection with the salaries of the parties' child-care providers," among other provisions regarding the Rogers' home in McLean, Virginia. JA 480-484. The divorce became final on September 17, 2012. JA 328 ¶ 15.

*The First Lawsuit against Jon Deane*

On January 19, 2012, Rogers sued her ex-husband, her children's nanny, a psychiatrist involved with the Rogers' children, and Deane in the Fairfax County Circuit Court. *See* JA 405-444. Her claims against her ex-husband, the nanny and the psychiatrist focused on events that transpired during the parties' bitter divorce battle. In contrast, her claims against Deane in that complaint were nearly identical to the claims she made in the current lawsuit. During discovery, Deane responded to Rogers' interrogatories, requests for admissions and produced approximately 370 pages' worth of documents in response to her document requests. In July Rogers took a voluntary nonsuit of the claims against Deane. In January 2013 she

10

filed this lawsuit in the United States District Court for the Eastern District of Virginia.

## Statement of Standard of Review

This Court reviews the district court's denial of Rogers' Rule 56(d) request for abuse of discretion. *Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006) (citing *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995)). In the absence of a clear abuse of discretion or "'unless there is a real possibility the party was prejudiced by the denial'" this Court will not reverse a denial of a Rule 56(d) request. *Id.* (quoting *Strag v. Bd. of Trustees*, 55 F.3d 943, 954 (4th Cir. 1995)). This court encourages denials of Rule 56(d) requests when "'the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment.'" *Works v. Colvin*, 519 F. App'x 176, 182 (4th Cir. 2013) (quoting *Ingle*, 439 F.3d at 195).

This Court reviews the district court's grant of summary judgment *de novo*. *Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 299 (4th Cir. 2012). When doing so, this Court applies the same legal standards as the district court. *Turner v. United States*, 736 F.3d 274, 280 (4th Cir. 2013). If a moving party demonstrates, based upon the pleadings, and any affidavits or other materials submitted, that there is no genuine dispute as to any material fact, that party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under *Celotex*

11

*Corporation v. Caltrett*, 477 U.S. 317 (1986), "'the moving party on a summary judgment motion need not produce evidence, but simply can argue that there is an absence of evidence by which the nonmovant can prove [her] case.'" *Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 393-94 (4th Cir. 1994) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720, at 10 (2d ed. Supp. 1994)). Once the moving party makes the initial showing under Rule 56(a), the burden of production shifts to the non-moving party. *Clay v. La Porta*, 815 F. Supp. 911, 912 (E.D. Va. 1993).

To meet that burden, the non-moving party must go beyond the pleadings and "bring forth facts showing that 'reasonable minds could differ' on a material point." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249-50. Summary judgment is not only permissible in this scenario, but "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Here, the district court properly granted summary

12

judgment to Deane because Rogers failed to provide sufficient evidence to establish the existence of several essential elements to her case. Its judgment should be affirmed.

## SUMMARY OF ARGUMENT

The district court correctly applied Virginia law when determining that Rogers could not recover her breach of contract damages as a matter of law. This Court should affirm the judgment in Deane's favor because Rogers could not prove the proximate cause element of her claim. Alternatively, the district court did not err in concluding that her claimed damages were consequential as opposed to direct. When Rogers claimed that her agreement with Deane was implied as opposed to written; and when Deane produced an engagement letter which disclaimed liability for the penalties and interest she incurred because she did not pay her taxes on time; Rogers had the burden to produce evidence showing that he agreed to be liable for those damages. Moreover, she is bound by her counsel's concession during oral argument that these damages were consequential. That concession combined with her failure to argue this issue in opposition to the motion for summary judgment precludes her from raising it in this appeal.

Rogers has not demonstrated any error in the district court's dismissal of her business conspiracy claim. The district court properly determined that Deane and Ed Rogers were in a principal-agent relationship, which precluded them from

13

legally conspiring with one another. In the alternative, Rogers did not offer sufficient evidence of Deane's legal malice toward her business or that he proximately caused the alleged injury to her business.

The district court did not abuse its discretion in granting summary judgment without permitting Rogers to conduct additional discovery. The additional discovery she sought would not have created a genuine issue of material fact. The lack of an answer from Deane to the Second Amended Complaint does not provide a basis for finding that the district court erred in granting Deane's motion for summary judgment. Accordingly, Deane respectfully requests that this Court affirm the district court's judgment.

## ARGUMENT

In an attempt to mask her failure to provide any evidence to support her claims at the summary judgment stage, Rogers now mischaracterizes the district court's opinion and continues to rely on the conclusory allegations she made in the sixth iteration of a complaint against Deane. The district court correctly granted summary judgment to Deane, and its decision rests on multiple independent grounds for relief.

The pleading at issue was her third complaint in the district court, and the sixth overall against Deane since she first brought suit against him in January 2012. The time had come for her to rely on something other than conclusory

14

allegations and baseless assertions. *Pelphrey v. United States*, 674 F.2d 243, 247 (4th Cir. 1982) (citing *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-289 (1968)) ("Allegations contained in the pleadings do not create an issue sufficient to overcome a summary judgment motion supported by affidavits.") Deane made the initial showing under Rule 56(a) – that no material facts were genuinely in dispute. The burden of production shifted to Rogers, to go beyond the pleadings and "bring forth facts showing that 'reasonable minds could differ' on a material point." *Bouchat*, 346 F.3d at 522 (quoting *Anderson*, 477 U.S. at 250). She failed to so, and the district court properly granted summary judgment to Deane without allowing further discovery.

Now on appeal, Rogers' arguments are plagued by the same defects that led to the district court's judgment against her - she has no "evidence" to demonstrate the district court erred and again relies on conclusory allegations and unsupported arguments. Throughout her brief, Rogers repeatedly argues that she "testified" to certain facts and events. *See, e.g.*, Appellant Brief ("App. Br.") at 18, 36, 43. There was no live testimony by any party or witness at any hearing in the district court. The citations to her "testimony" are to the self-serving affidavit she submitted in support of her opposition to Deane's motion for summary judgment. The two are not one in the same. Additionally, Rogers' misconstruction of the district court's opinion falls short of establishing legal error, much less convincing this Court that

15

"every stated ground for the judgment against [her] is incorrect." *In re Under Seal*, 749 F.3d 276, 293 (4th Cir. 2014) (citing *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014)). Accordingly, this Court should affirm the district court's judgment.

## I.  THE DISTRICT COURT CORRECTLY APPLIED VIRGINIA LAW TO FIND THAT ROGERS COULD NOT RECOVER THE DAMAGES SHE SOUGHT AS A MATTER OF LAW.

Rogers' breach of contract claim failed as a matter of law because she could not prove her entitlement to the damages she claimed. The district court properly found that she presented no evidence that Deane's actions proximately caused her damages or an issue of disputed fact regarding her consequential damages. Therefore, the district court's grant of summary judgment on Rogers' breach of contract claim should be affirmed.

### A. The Proximate Cause of Rogers' Damages was her Failure to pay her Income Taxes when they were due.

Rogers knew she had to pay $56,257 in income taxes on or before October 15, 2010 but chose not to do so. Her failure to pay her taxes caused the IRS to charge her penalties and interest. She blames Deane for these damages, but offered no evidence to demonstrate how anything Deane did or failed to do caused the IRS to charge the penalties and interest. Specifically, she seeks excess tax liability, garnishment of her wages, the public filing of a notice of federal tax lien, the imposition of a federal tax lien, expenses associated with the IRS' collection

16

efforts, amending her separate tax returns, negative impacts on her credit rating, interest, penalties, loss of income and business opportunity and "other pecuniary damages." JA 343-344 ¶¶ 97-106; JA 346 ¶ 112. The district court examined each of these categories of damages and correctly concluded that none of them was recoverable from Deane. JA 663-666. This Court should adopt the district court's reasoning and affirm its finding that Rogers failed to establish a genuine dispute of material fact regarding the proximate cause element of her breach of contract claim.

1.  Regardless of whether her taxes were due on April 15, 2010 or October 15, 2010, Rogers did not pay them on either date.

Rogers' own actions beginning in April 2010 and culminating in her failure to timely pay her income taxes are the proximate cause of her damages because they are the "act[s] or omission[s] that, in natural and continuous sequence unbroken by a superseding cause" produced the damages she attempted to recover from Deane. *Williams v. Joynes*, 278 Va. 57, 62, 677 S.E.2d 261, 264 (2009). The district court correctly held that, "[a]s the taxpayer, [Rogers was] personally responsible for paying her own taxes . . . . [She] failed to pay her taxes on time." JA 663. Rogers did not dispute this fact. JA 562 ¶ 35. It was her responsibility, and hers alone, to ensure that her taxes were filed and paid on time. Had she paid her taxes when she filed her return in October 2010 she would not have incurred the

17

penalties and interest charged by the IRS and damages associated with the garnishment she seeks to recover from Deane.

2. Deane told Rogers she owed income taxes in two separate
emails six months prior to the October 15, 2010 deadline.

Rogers does not dispute that Deane sent her emails on May 14, 2010 and June 12, 2010, reminding her that there was a balance due for both the federal and Virginia returns because she earned income in 2009 but did not have taxes withheld. JA 401-402. On May 14, 2010, Deane stated: "We should strive to get your returns finished and filed as quickly as possible since there were no withholdings and thus there will be a balance due with both federal and VA." JA 401. In the June 2010 email, Deane wrote: "Since there is a balance due, it's important to get them finished and paid up as soon as possible . . . . Please call me to review this when you get a chance." JA 402. Rogers discounts these emails with a confusing argument about Deane's alleged conspiracy with her ex-husband but does not dispute that she received them. App. Br. 37-38.

She also erroneously contends that the district court relied solely on Deane's declaration in concluding that he did not attempt to hide her tax liability or lack of deductions or credits from her. App. Br. 38. But this is just one of many mischaracterizations of the district court's opinion. In fact, the court explicitly relied on the May and June 2010 emails, holding: "[Rogers] owed taxes and had been made aware of that fact by Mr. Deane as early as May of 2010." JA 664.

18

Rogers knew, as early as May 2010 (with the first email from Deane) and certainly by August 2010[5] (when Deane sent her the draft return showing the taxes owed), that she would have to pay $56,257 in taxes when she filed her return in October. Still, she chose not to do so. She fired Deane in July, three months before the taxes were due, and hired another accountant, who prepared a tax return also showing the taxes she owed. She filed that return but did not pay the taxes. It was this failure to pay her tax liability—not anything Deane did or failed to do—that proximately caused interest and penalties to accrue during that time.

      3.  <u>Rogers' actions after failing to pay her taxes on October 15, 2010 caused her to incur additional damages.</u>

In October 2010, Rogers filed her tax return but did not pay her taxes. JA 562 ¶ 35. The IRS began collection efforts and eventually issued a Notice of Federal Tax Lien against her in June 2011. *Id.* at ¶ 39. The district court appropriately considered the evidence before it and concluded:

> [T]he Notice of Federal Tax Lien is the result of [Rogers'] decision, almost a year after firing [Deane], not to pay her outstanding tax liability. This tax liability was [Rogers'] responsibility, so any damages that resulted from her decision not to pay it in 2011 are consequential damages not recoverable from [Deane].

JA 665-666. Rogers cannot dispute that the remainder of her claimed damages flow from her decision not to pay her taxes on time—garnishment of her wages, expenses associated with the IRS' collection efforts, amending her separate tax

---

[5] JA 547 ¶ 22.

returns, negative impacts on her credit rating, loss of income and business opportunity, etc.

The district court correctly determined that Rogers could not prove the proximate cause element of her breach of contract claim as a matter of law. *See Hazel & Thomas v. Yavari*, 251 Va. 162, 166, 465 S.E.2d 812, 815 (1996) (holding that proximate cause is a question of law in a professional malpractice case if "the evidence is such that reasonable minds could not differ as to the outcome"). Deane's decision to follow Ed Rogers' instruction to complete and file a separate return is not the act that "in natural and continuous sequence" caused her to incur excess tax liability, wage garnishment, the federal tax lien, or any of her other damages. *See Williams*, 278 Va. at 63 (defining proximate cause as "an act or omission that, in natural and continuous sequence unbroken by a superseding cause, produces a particular event and without which that event would not have occurred"). Her decision not to pay the taxes when they were due and to continue to not pay her tax liability proximately caused her damages.

> 4. Rogers' arguments about the joint extension request do not prove that Deane proximately caused her damages.

Rogers argues that the joint extension request that Deane filed on or before April 15, 2010 allows her to prevail on proximate cause for two reasons: 1) she consciously decided not to pay her taxes on April 15, 2010 because she was relying on the extension request which showed that the Rogers overpaid their tax liability

20

for the year through estimated tax payments;[6] and 2) Deane could not have properly filed the extension request on her behalf because the IRS assessed a late filing penalty against her. App. Br. at 13-14 and 22, respectively. Like her arguments regarding her other claims, these contentions are not supported by the evidence. Rogers would have to demonstrate that she actually received a copy of the extension request from Deane on or before April 15, 2010 to prove that she relied on it when deciding not to submit a payment to the IRS on April 15, 2010. But she submitted no evidence to the district court that would tend to prove the date when she first received a copy of the extension request. To the contrary, Rogers' own words in a letter to the IRS demonstrated that she was willfully ignorant of her obligation to pay her taxes on time. *See* JA 449 ("From 1989 up until the 2009 tax return my spouse and I filed married jointly. *In most of the last ten years I did not even see the tax return*. I am aware that April and July extensions were filed and our taxes were generally always filed in October.")

Rogers also argues that Deane did not properly file the joint extension request because the IRS assessed a late filing penalty against her. But as the district court found, Rogers did not "provide proof or documentation that her penalty was in fact for a failure to get an extension on filing rather than for non-payment." JA

---

[6] Although she alluded to this "theory" when opposing Deane's summary judgment motion, Rogers never actually contended that she contemplated making a tax payment in April 2010 and then decided not to based on the contents of the extension request. Consistent with this Court's well-settled appellate principles, this argument should be disregarded as waived. *See Agra, Gill & Duffus, Inc. v. Benson*, 920 F.2d 1173, 1176 (4th Cir. 1990) (*Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 318 (4th Cir. 1988)).

21

664. Therefore, she could not demonstrate a disputed issue of material fact regarding the proximate cause element of her breach of contract claim, and the district court's judgment should be affirmed.

### B. In the Alternative, Rogers' Claimed Damages are Consequential, not Direct, and she Failed to Produce Evidence that Deane Agreed to be Liable for Them.

Virginia law recognizes two distinct categories of damages for breach of contract claims: direct and consequential. *R.K. Chevrolet, Inc. v. Hayden*, 253 Va. 50, 56, 480 S.E.2d 477, 481 (1997). Direct damages are "those that flow 'naturally' from a breach of contract; *i.e.*, those that, in the ordinary course of human experience, can be expected to result from the breach, and are compensable." *Id.* Whereas consequential damages "arise from the intervention of 'special circumstances' not ordinarily predictable and are compensable only if" the parties contemplated the special circumstances when entering into the contract. *Id.* (citing *Roanoke Hosp. Ass'n v. Doyle & Russell, Inc.*, 215 Va. 796, 801, 214 S.E.2d 155, 160 (1975)).

The undisputed evidence before the district court demonstrated that Rogers' damages were consequential. Significantly, she offered no evidence that she and Deane contemplated that he would be liable for them in the "special circumstances" that occurred in this case. The district court did not, however, have to decide whether her claimed damages were consequential or direct because her

22

counsel conceded that they were consequential during oral argument on the motion to dismiss. That concession, combined with her subsequent failure to argue that her damages were direct in opposition to Deane's motion for summary judgment, precludes her from raising this issue on appeal. Accordingly, this Court should affirm the district court's grant of summary judgment on the breach of contract claim.

1. Rogers' claimed damages are consequential because they did not naturally or ordinarily arise from a breach of an agreement to prepare a tax return.

Even though the district court did not reach this issue, the district court could have easily concluded that Rogers' damages did not ordinarily or naturally arise from a breach of the agreement to prepare her tax return. Rogers' alleged damages included items such as garnishment of her wages, the imposition of a federal tax lien against her, expenses associated with the IRS' collection efforts, negative impacts on her credit rating, interest, penalties, loss of income and business opportunity. As discussed above, these damages arose from her failure to pay her taxes when they were due. The ordinary course of human experience dictates that that these types of damages do not arise naturally and ordinarily from a tax return preparer's error in preparing a tax return.

Rogers points to several cases in support of her argument that these damages are direct instead of consequential. App. Br. 28-29. But not one of these cases is on

point with the facts present in this case. Certain categories of tax-related damages may be recoverable as direct damages in a different factual context.[7] But this Court's review is limited to the particular facts of this case.

> 2. Rogers failed to present evidence that Deane agreed to be liable for her consequential damages.

The district court correctly applied Virginia law on consequential damages in determining that Rogers failed to submit evidence that Deane agreed to be liable for her consequential damages. Consequential damages are recoverable only when the special circumstances which intervened to cause the damages were within the specific contemplation of the parties at the time of contracting. *Long v. Abbruzzetti*, 254 Va. 122, 127, 487 S.E.2d 217, 219 (1997). The district court appropriately reviewed the evidence to determine what the parties contemplated with respect to her consequential damages. JA 660-661.

In its comparison of the evidence, the district court accepted Deane's engagement letter as evidence of what was in *his* contemplation at the time of contracting, noting that Deane did not contemplate liability for Rogers, or any other client's "consequential, special, punitive, or indirect damages." *Id*.; JA 381. Deane's engagement letter specifically stated that he would not be liable for

---

[7] Contrary to Rogers' assertions, Deane does not suggest that an accountant could never be liable for penalties and interest that result directly from his negligence, e.g. a mistake in preparing a return that results in penalties being charged against the taxpayer. *See Boone v. C. Arthur Weaver Co.*, 235 Va. 157, 163, 365 S.E.2d 764, 767 (1988). That is not the case here. Rogers fired Deane three months before her taxes were due and then hired another accountant who prepared the tax return she filed in October 2010 that resulted in the penalties and interest.

24

penalties or interest resulting from Rogers' failure to pay her taxes on time. The court then searched the record for evidence from Rogers that would dispute this fact and found none.

Rogers contends that Deane's engagement letter showed that he foresaw these damages and therefore contemplated them at the time of contracting. But she confuses the foreseeability analysis and its application to this case. The question is not whether Deane foresaw that a taxpayer like Rogers could owe penalties and interest if she failed to pay her taxes on time. The question is whether, when the Rogers hired him to prepare the tax returns, Deane foresaw that she would fire him four months later; hire another accountant; that the new accountant would prepare a tax return for Rogers; that Rogers would file that return timely, but not pay the taxes the tax return showed she owed; that the IRS would charge her with interest and penalties and, over one year later, slap her with a tax lien and garnishment. *Va. Polytechnic Inst. & State Univ. v. Interactive Return Serv.*, 267 Va. 642, 655-56 (2004). Not even a psychic could have predicted those special circumstances. Moreover, the engagement letter does not state that Deane foresaw that Rogers or another taxpayer would incur these damages if he made an error in the tax return preparation. It states that these damages could result if the taxpayer fails to pay on time and then unequivocally disclaims liability for them. JA 380-381.

Regardless, the district court appropriately concluded that it could not treat the engagement letter as the parties' agreement based on Rogers' assertion that she never saw or signed it. Rogers contended that an implied contract governed the parties' agreement. But when asked, her counsel could not identify the terms of that agreement. So the district court relied on the engagement letter for a proper purpose only—as some evidence of the terms of the parties' agreement. The district court did not impose a new or higher standard on Rogers with this analysis. It applied the summary judgment standard to determine whether Rogers had evidence of a disputed fact on this issue. Her evidence on this issue was lacking just as it was with the rest of her claims. Accordingly, the district court's grant of summary judgment to Deane should be affirmed.

3. <u>Rogers' counsel's concession that her damages are consequential and her failure to argue they were direct preclude her from raising this issue on appeal.</u>

During oral argument on Deane's motion to dismiss, Rogers' counsel conceded that her damages were consequential. The colloquy with the district court was as follows:

> MR. GREMMINGER: The accountant is liable for the penalties and the interest because they were the consequential result of the accountant's malpractice here.
>
> *THE COURT: All right. So you're saying these are -- you acknowledge these are consequential damages, then?*
>
> *MR. GREMMINGER: Yes.* And the lien --

26

JA 296 (emphasis added). This exchange is deliberate, clear and unambiguous. And even though it involves a legal conclusion, this Court may consider it a judicial admission that binds Rogers. *Meyer v. Berkshire Life Ins. Co.*, 372 F.3d 261, 265 n.2 (4th Cir. 2004) (holding finding opinions and legal conclusions that are "deliberate, clear, and unambiguous statements by counsel may be considered judicial admissions that bind the conceding party to the representations made.") The district court reasonably relied on this representation when analyzing Rogers' breach of contract claim, and she cannot now claim to avoid it. *Potain Tower Cranes, Inc. v. Capitol Tower Cranes, Inc*., 892 F.2d 74 (4th Cir. 1989) ("As a general rule, litigants are bound by the acts of their freely-selected attorneys and courts are entitled to rely on the reasonable representations of those attorneys.").

Additionally, Rogers has waived this argument because she did not argue that her damages were direct in opposition to Deane's motion for summary judgment. This Court does not accept new theories for recovery on appeal that were not raised in the district court "except under unusual circumstances that would result in a miscarriage of justice." *See Benson*, 920 F.2d at 1176 (*citing Hanson*, 859 F.2d at 318). Rogers has not presented any evidence or argument of any unusual circumstances that would result in a miscarriage of justice in this case. Consequently, this Court should not consider her argument that her damages were direct instead of consequential.

27

The district court granted Deane summary judgment on the breach of contract claim for multiple independent reasons, all of which were legally sound. Rogers has not demonstrated that each of them was incorrect. Accordingly, this Court should affirm the district court's judgment on Rogers' breach of contract claim.

## II. THE DISTRICT COURT DID NOT ERR IN DISMISSING ROGERS' BUSINESS CONSPIRACY CLAIM.

The district court correctly determined that Rogers could not recover under Va. Code §§ 18.2-499-500 against Deane as a matter of law. The court rested its decision on three independent bases, each of which provides a sound rationale for dismissing her claim. To prevail on a claim for business conspiracy under Va. Code §§ 18.2-499-500, a plaintiff must prove that two or more people combined or agreed to act in concert for the purpose of "willfully and maliciously injuring another in his reputation, trade, business, or profession by any means whatsoever" with resulting damage to the plaintiff's business. *See Gov't Emps. Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 706 (E.D. Va. 2004) (citing Va. Code § 18.2-499).

Rogers could not prevail on this claim as a matter of law because Deane and Ed Rogers were in a principal/agent relationship for purposes of the alleged conspiratorial activity. Rogers produced no evidence to support her contention that Deane acted outside the scope of his agency with her ex-husband. In the

alternative, Rogers failed to produce evidence of the two other required elements under the statute: legal malice toward her business and actions proximately causing damage to her business.

### A. Jon Deane was Acting as Ed Rogers' Agent and Therefore Could not Legally Conspire with him.

When two individuals are in a principal-agent relationship, they do not constitute a combination of "two or more persons" under Va. Code § 18.2-499 and -500. *Wuchenich v. Shenandoah Mem'l Hosp.*, 215 F.3d 1324, *12(4th Cir. 2000) (citing *Charles E. Brauer Co. v. Nationsbank*, 466 S.E.2d 382, 386-87 (Va. 1996)). A conspiracy in this context is a legal impossibility. *Id.* The record supports the district court's determination that Deane and Ed Rogers were in a principal-agent relationship and therefore could not legally conspire to injure Rogers' business.

The question of whether an agency relationship exists is a question of law when the court can make the determination by reviewing unambiguous written documents. *First Am. Title Ins. Co. v. First Alliance Title, Inc.*, 718 F. Supp. 2d 669, 678 (E.D. Va. 2010) (citing *McLean Contr. Co. v. Waterman S.S. Corp.*, 277 F.3d 477, 479 (4th Cir. 2002)). Deane submitted unambiguous written documents in support of his motion for summary judgment in the form of the letter agreement and Ed Rogers' affidavit. JA 380-381; 386-388. In contrast, Rogers relied on conclusory allegations and arguments without any supporting evidence to the contrary.

29

1.  <u>Deane proved that he was Rogers' agent under Virginia law's
    two-part test for an agency relationship.</u>

As stated in Ed Rogers' affidavit, Deane was and still is Ed Rogers' agent for tax purposes. JA 386. Under Virginia law, a two-part test determines the existence of an agency relationship. First, the principal must have the power to control the methods and details of the alleged agent's work. *Wells v. Whitaker*, 207 Va. 616, 624, 151 S.E.2d 421, 429 (1966). Second, the work must be performed for the principal's benefit. *Id.*

Ed Rogers controlled the methods and details of the work he retained Deane to perform – preparing his taxes. The "method" in this context is the 2009 married filing separately tax return instead of a married filing jointly return that Rogers would have preferred. As discussed previously, the decision whether to file jointly or separately belongs to each individual married taxpayer and no one else. Deane could not have forced Ed Rogers to file a married filing jointly return, nor could he have prepared a married filing separately return without Ed Rogers' direction. Moreover, Ed Rogers could have fired Deane at any time and obtained another accountant to prepare his tax returns. The "details" in this context are the items in the return including the deductions, credits and exemptions that Rogers believes she was entitled to. Rogers offered no evidence suggesting that her ex-husband did not control the details of this work by providing Deane with the data for the return. Nor could she, because the engagement letter states, "we will prepare returns from

30

the information which you will furnish to us . . . . It is your responsibility to provide all the information required for us to complete the returns." JA 380.

Rogers' own allegations and arguments suggest that Deane's alleged "malfeasance" with the tax returns was done on Ed Rogers' behalf and for his benefit so he could allegedly cripple her financially and preclude her from fighting him for custody of their children. JA 326 ¶ 3; JA 341 ¶ 89; JA 515; App. Br. at 8. Try as she might, she cannot dispute that the actions she complains of would have benefitted Ed Rogers. She attempts to confuse the issues by arguing that Deane acted outside the scope of his agency because he was not "engaged to represent Ed Rogers in transactions with Appellant." App. Br. at 42, n. 16. This assertion and others like it are unsupported by the record. More to the point, it does not make any sense. There is no evidence that Deane engaged in any separate "transaction" with Rogers aside from the tax return preparation. At its core, Rogers' complaint is that Deane prepared a married filing separate return for Ed Rogers without consulting her and gave the couple's deductions and credits to him instead of sharing them with her. The rest of her contentions are nothing more than white noise and red herrings that she was unable to bolster with evidence in opposition to Deane's motion for summary judgment.

2. <u>Rogers' construction of the test for agency is not supported by Virginia law.</u>

In applying Virginia law to conclude that Deane was Ed Rogers' agent and acted within the scope of its agency, the district court appropriately rejected Rogers' misconstruction of the test for agency. On appeal, she relies on several of the same inapposite sources and leans heavily on a recent decision from the United States Court of Appeals for the D.C. Circuit. App. Br. at 43-45. A district court sitting in diversity jurisdiction must apply the substantive law of the forum state. *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 369 (4th Cir. 2013). The parties agree that Virginia law governs this dispute. App. Br. at 20.

        a. *An agent's authority to alter the legal relations between a principal and a third party is not the "hallmark" of an agency relationship under Virginia law.*

On brief, Rogers contends that the "hallmark of an agency relationship" is the agent's authority to alter the legal relations between a principal and a third party. App. Br. at 41-42 (citing Restatement (2d) of Agency § 12). Not so. The Restatement (2d) of Agency does not describe this authority as the "hallmark of an agency relationship." More importantly, the Virginia Supreme Court has never adopted this section of the Restatement (2d) of Agency.[8] Under Virginia law, the determinative factor is the principal's right to control the agent. *Anita's New Mexico Style Mexican Food, Inc. v. Anita's Mexican Foods Corp.*, 201 F.3d 314,

---

[8] Indeed, the Virginia Supreme Court has never even cited this section of the Restatement (2d) of Agency in a reported decision.

318 (4th Cir. 2000) (citing *Texas Co. v. Zeigler,* 177 Va. 557, 14 S.E.2d 704, 706 (1941)). Rogers is correct that not all accountants are the agents of their clients. And the district court agreed, holding that a principal-agent relationship may not exist in all accountant-client relationships. JA 668. Rogers is incorrect, however, that Deane's documentary evidence failed to establish the agency relationship that the district court recognized. The engagement letter and affidavits from Deane and Ed Rogers demonstrated that he had the right to control the method and details of Deane's preparation of his tax returns.

> b. *The D.C. Circuit's decision in Loving v. IRS is neither binding nor persuasive on this issue.*

Rogers' reliance on the D.C. Circuit's decision in *Loving v. IRS*, 742 F.3d 1013 (D.C. Cir. 2014) is unavailing. *Loving* is not binding; nor is it persuasive because it does not interpret or even relate to Virginia law on agency relationships. The question before the D.C. Circuit in *Loving* was whether the IRS's 2011 regulations exceeded the scope of its authority to regulate the practice of "representatives" of taxpayers before the Treasury Department. *Id.* at 1015. When promulgating these regulations, the IRS determined that its authority stretched to include tax-return preparers along with others who "represent" taxpayers. *Id.* at 1014-015.

The D.C. Circuit determined that the IRS's authority did not reach so broadly because "representation" before the IRS involves additional actions by

33

both a representative and a taxpayer that do not regularly take place when a tax-return preparer assists a taxpayer in preparing and filing a tax return. *Id.* at 1015. When making this determination, the D.C. Circuit discussed obtaining a power of attorney because the IRS regulations require that action before an individual may "represent" a taxpayer before the IRS. *Id.* at 1017.

Although the decision discusses the same categories of individuals involved in this case–taxpayers and tax-return preparers–the analysis turned on federal administrative law and focused on the scope of a federal agency's authority to promulgate regulations. Here, the district court's diversity jurisdiction required it to apply Virginia's agency law to determine whether Deane and Mr. Rogers were in a principal-agent relationship for purposes of Rogers' business conspiracy claim. *Loving* is therefore inapplicable to the case at bar.

In her discussion of *Loving*, Rogers' contends that the district court deemed Deane to be Ed Rogers' agent because he checked the box on his 2009 tax return allowing Deane to speak with the IRS about the return. App. Br. at 44-45. This is simply not true. As it did throughout its opinion, the district court contrasted the evidence that Rogers relied on with the evidence that Deane submitted in support of his motion. The district court's decision does not indicate that it relied solely on Ed Rogers' designation of Deane on his tax returns when concluding that Deane was Ed Rogers' agent. JA 669. The district court explicitly held:

34

> Contrary to [Rogers'] assertion, [Deane] demonstrated that Mr. Rogers clearly had control over the details of Mr. Deane's work because he made decisions regarding whether to prepare joint or separate tax returns, provided all the details for the tax returns, and instructed Mr. Deane on which deductions, credits, and exemptions to apply to his return.

*Id.* Consequently, Rogers' other suggested "tests" for determining agency should be rejected and the district court's judgment affirmed.

### B. In the Alternative, Rogers Failed to Produce Evidence that Deane's Actions Proximately Caused the Alleged Damage to her Business or that he acted with Legal Malice Toward her Business.

Even if the district court erred in concluding that an agency relationship existed between Deane and Ed Rogers, its judgment still stands on its conclusion that Rogers did not present evidence regarding legal malice or causation. As she did with most of her other claims, Rogers relied on her own declaration, conclusory allegations and speculation in opposing Deane's motion for summary judgment on these issues.  She did not meet her burden of production to show that Deane's actions proximately caused the damage to her business or that he acted with legal malice toward her business.

### 1. Rogers' theory of causation required too many logical leaps cause reasonable minds to differ on its applicability.

The same sound reasoning that the district court applied to the proximate cause element of Rogers' breach of contract claim applies to the causation element of her business conspiracy claim. To survive summary judgment, Rogers was

required to produce evidence that Deane's alleged conspiratorial acts caused damage to her business. But all the damages she claims flow from the imposition of the federal tax lien and its attachment to her business assets in June 2011, almost one year after she fired Deane. The district court correctly determined that Rogers could not prove this element as a matter of law because she did not dispute that she failed to pay her taxes when they were due in October 2010 and allowed almost another year to pass before making any payments. Rogers also acknowledged that she was aware of her tax liability as early as August 2010. JA 547 ¶ 22. The logical leaps required to allow Rogers to proceed on this claim were simply too great given the facts and evidence submitted at the summary judgment stage. The court summarized this issue well, finding:

> In order to link [Rogers'] damages to a business conspiracy, the Court would have to conclude that [Deane] knew that she would not pay her taxes on time, that even after becoming aware of penalties and interest she would still not pay her taxes, and that even in 2011, a year after becoming aware of her liability, she would simply not have the money to pay her taxes. Those conclusions are simply too attenuated, and as such, the Court finds as a matter of law that [Rogers] has failed to satisfy the element of causation.

JA 672. This Court should adopt this reasoning and affirm the judgment in Deane's favor on the business conspiracy claim.

36

2. <u>The only evidence of legal malice that Rogers supplied related to her divorce and custody battles, not her business.</u>

Rogers' arguments and "evidence" in support of the legal malice element of her business conspiracy claim are also legally deficient. A claim for statutory business conspiracy is proper when "'malicious conduct is directed at one's *business*, not one's *person*,'" *Buschi v. Kirven*, 775 F.2d 1240, 1259 (4th Cir. 1985) (internal citations omitted). Virginia Code § 18.2-499 focuses on conduct directed at property, i.e. one's business, applying only to "'conspiracies resulting in business-related damages.'" *Id.*

Plaintiff's claim failed to meet all of these requirements. She did not even allege malicious conduct directed at her business; she alleged malicious conduct directed at her personally, which consequently affected her business. *See* JA 342 ¶¶ 93, 95 (referring to her reputation). The complaint is replete with allegations of a marriage gone sour and an accountant who chose the husband's side because the accountant and the husband have other business dealings together. *See* JA 326 ¶ 4, JA 328 ¶¶ 13, 14. It also affirmatively alleges that Ed Rogers enlisted Deane to help him financially cripple Rogers so that Mr. Rogers could easily obtain custody of their children. JA 326 ¶ 3-4, JA 341 ¶ 89. For the first time on appeal, Rogers adjusts this allegation to link it to her business but still leaves in the reference to a custody battle. App. Br. at 8.

37

On brief, Rogers contends that the business conspiracy statute does not require her to prove that Deane's "primary and overriding purpose" was to injure her business so long as she could prove that Deane acted with legal malice. App. Br. at 45-46. While the statute might not require she prove it was Deane's primary and overriding purpose, she does have to offer some evidence it was one of the purposes of the so-called conspiracy. *Schlegel v. Bank of Am., N.A.*, 505 F. Supp. 2d 321, 326 (W.D. Va. 2007) *aff'd sub nom. Schlegel v. Bank of Am., NA*, 258 F. App'x 543 (4th Cir. 2007). Rogers does not cite a single case that stands for the proposition she advances – that an individual defendant can be pursued for a business conspiracy claim when the alleged co-conspirator is not joined in the action and without evidence that the individual defendant intended to injure the plaintiff's business. The statute provides an action against one who "combine[s] [with another] for the purpose of (i) willfully and maliciously injuring another in [her] reputation, trade, business or profession." Va. Code § 18.2-499(A). Rogers' construction of the statute would eviscerate its plain language and purpose and does not provide a basis for reversing the district court's judgment.

Because Rogers failed to produce evidence to support at least one, if not all three, of the elements of her business conspiracy claim, this Court should affirm the district court's judgment.

### III. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION WHEN GRANTING SUMMARY JUDGMENT WITHOUT ALLOWING THE ADDITIONAL DISCOVERY ROGERS REQUESTED.

The district court was correct to follow this Court's guidance in granting summary judgment without granting Rogers' request for discovery because "'the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment.'" *Works*, 519 F. App'x at 182 (quoting *Ingle*, 439 F.3d at 195). Rogers' attempt at mischaracterizing the district court's treatment of this issue does not prove that she suffered prejudice when it implicitly denied her request by granting Deane's motion for summary judgment. Moreover, nothing prevented Rogers from conducting discovery during the ten months this case was pending. She filed her complaint in the district court in January 2013. She could have issued written discovery and deposed Ed Rogers and Deane at any time prior to the hearing on the motion for summary judgment in October 2013.

Rogers' attorney's Rule 56(d) affidavit requested discovery in the form of deposing Ed Rogers and Deane on several categories of issues, none of which by itself would have created a material issue of fact. JA 549-550.

## A. Rogers' First Three Requested Discovery Topics Would not have Created a Disputed Issue of Material Fact in Support of her Breach of Contract Claim.

First, Rogers claims she wanted to question Deane about his belief that she and her ex-husband had agreed to file separate returns. JA 549. This would not have created a material issue of fact because the IRS does not require an agreement between married taxpayers to file separate returns. It is each individual married taxpayer's right to decide, and both spouses must agree to file jointly. JA 456.

Second, Rogers says she wanted to ask Deane about his May 4, 2010 email to both Rogers and her ex-husband which he inadvertently excluded Rogers from. JA 550. This request relates to Rogers' tortured and unsupported argument that Deane "misled" her by sending her a copy of the joint extension request which lulled her into believing that she owed no taxes. The district court correctly recognized that Deane alerted Rogers to her tax liability on at least two separate occasions in May and June of 2010 through emails. *See* JA 401-402. She also never produced any evidence of what point in time she received the copy of the joint extension request and therefore could not prove any "lulling" or "misleading" by Deane.

For the same reasons, Rogers' third item in her discovery request–to depose Deane to determine whether he misled her–was not likely to create an issue of material fact. As previously noted, the Second Amended Complaint was the sixth

iteration of Rogers' claims against Deane arising out of the same facts and circumstances. The discovery that occurred during the state court action was hardly "limited" as she suggests. App. Br. at 2. Rogers, Deane and her ex-husband exchanged interrogatories, document requests and requests for admission in the circuit court action. Deane produced approximately 370 pages' worth of documents to Rogers. And he underwent a three hour deposition in which Rogers' counsel questioned him extensively about his motivations and intent in preparing the 2009 tax returns. *See* JA 87-94. Rogers' divorce attorney deposed her ex-husband on two separate occasions for a total of three days of testimony, and did question him about the tax returns and his communications with Deane. JA 187-189. These depositions gave Rogers ample opportunity to question him about his interactions with Deane and the tax issues.

### B. Rogers' Fourth and Fifth Proposed Discovery Topics Would not have Created Issues of Material Fact in Support of her Claim for Statutory Business Conspiracy.

Rogers' fourth requested discovery topic also would not have created an issue of material fact. She requested the depositions of Deane and Ed Rogers to determine whether Ed Rogers engaged Deane to be his agent. The district court determined as a matter of law that an agency relationship existed between the two based on the unambiguous documentary evidence that Deane submitted in support of his motion for summary judgment. Even in the absence of an agency

41

relationship between the two, the district court found her business conspiracy claim legally deficient as described above.

The fifth and final topic of requested discovery involved another individual who could not legally conspire with Ed Rogers – his attorney, Andrew Asher. Although the district court did not explicitly rule on Rogers' request, its opinion did refer to Rogers' Rule 56(d) affidavit when rejecting this request. The district court correctly found that this request would not create a material issue of fact, holding:

> [Rogers] attempts to circumvent the Court's previous finding that her arguments are unpersuasive by now alleging in a conclusory fashion that there were "others" involved in the conspiracy. The only "other" that she ever refers to is Mr. Rogers' attorney. However, because an attorney/client relationship is also a agency [sic] relationship, there cannot be a statutory business conspiracy between Mr. Rogers and his attorney either. Furthermore, all of the actions regarding conspiring to harm [Rogers'] business are in relation to tax returns and [she] has not alleged anyone other than Mr. Deane was involved in the preparation of the 2009 taxes. [Rogers] cannot simply insert the word "others" without factual support for her allegation in order to survive a motion for summary judgment.

JA 670 (internal citations omitted).

Furthermore, contrary to the Rule 56(d) affidavit, Rogers' claims in the district court were not substantively different from her claims in the previous lawsuit in the Circuit Court for Fairfax County. The only differences involved

converting common law conspiracy to business conspiracy and leaving out the other named defendants. Several of the paragraphs in the complaint were taken nearly verbatim from the circuit court complaint. *Compare* JA 330-331 ¶¶ 34-40 with JA 427-428 ¶¶ 107-113; *see also*, JA 336 ¶ 70 and JA 437 ¶ 185.

In a final attempt to insert error into the district court's ruling, Rogers contends that Deane was required to file an answer before the district court could grant his motion.[9] App. Br. at 23, n. 8. Rogers cites no case law to support this contention, nor could she because the United States Supreme Court has rejected the same argument in a case that pended for over six years. *First Nat'l Bank of Arizona*, 391 U.S. at 290-294.

Because the various items of Rogers' requested discovery would not have by themselves created genuine issues of material fact, the district court did not err in granting summary judgment to Deane.

## CONCLUSION

The district court correctly found that Rogers could not prevail on her breach of contract claims because she could not prove the causation or damages elements. Moreover, the district court appropriately dismissed the business conspiracy claim on multiple independent grounds. The district court did not err in granting

---

[9] Rogers conveniently ignores that Deane filed an answer to her Second Amended Complaint in the Fairfax County Circuit Court action. JA 586.

summary judgment to Deane without allowing Rogers additional discovery.

Therefore, the district court's judgment on all issues should be affirmed.

Respectfully submitted,

JON DEANE, CPA
GAFFEY DEANE & TALLEY, PLC
By Counsel

CARR MALONEY P.C.


/s/ Kristine M. Ellison
Dennis J. Quinn
Kristine M. Ellison
Carr Maloney P.C.
2000 L Street, N.W., Suite 450
Washington, D.C.  20036
(202) 310-5500 - phone
(202) 310-5555 - fax
djq@carrmaloney.com
kme@carrmaloney.com
*Counsel for Jon Deane, CPA and*
*Gaffey Deane & Talley, PLC*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY on August 4, 2014, I electronically filed the foregoing

Brief of Appellees using the CM/ECF System, which will send notice and a copy

of the filing to the following registered CM/ECF users:

Steven Gremminger
Steven M. Oster
Gremminger Law Firm
5335 Wisconsin Avenue, N.W.
Suite 440
Washington, D.C.  20015
*Counsel for Appellant*

/s/ Kristine M. Ellison
Kristine M. Ellison

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Local Rule 34(a), oral argument is requested and will significantly aid the decisional process.

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

No. <u>14-1156</u>        **Caption:** <u>Edwina Rogers v. Jon Deane, CPA, et al.</u>

**CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)**
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [✓]   this brief contains _____10,328_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [ ]   this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [✓]   this brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word</u> [*identify word processing program*] in <u>14 point Times New Roman</u> [*identify font size and type style*]; **or**

   [ ]   this brief has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s) <u>Dennis Quinn</u>

Attorney for <u>Appellees</u>

Dated: <u>August 4, 2014</u>

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. <u>14-1156</u>          Caption: <u>Edwina Rogers v. Jon Deane, et. al.</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Gaffey, Deane Talley, PLC</u>
(name of party/amicus)

<u>Jon Deane</u>

who is <u>          appellees          </u>, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.   Does party/amicus have any parent corporations?                             ☐ YES ☑ NO
     If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                        ☐ YES ☑ NO
     If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?   ☐ YES ☑ NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐ YES ☑ NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?   ☐ YES ☑ NO
     If yes, identify any trustee and the members of any creditors' committee:

Signature: _____         Date: ____March 7, 2014____

Counsel for: _Appellees_____

## CERTIFICATE OF SERVICE
****************************

I certify that on ___March 7, 2014___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Steven M. Oster                          Steven Gremminger
Oster Law Firm                           Gremminger Law Firm
1850 M St. NW Suite 280                  5335 Wisconsin Ave. NW, Suite 440
Washington, DC 20036                     Washington, DC 20015
Counsel for Appellant

_____                    ____March 7, 2014____
(signature)                                        (date)

- 2 -